IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| ALIRAJ ENTERPRISES, INC., )<br>d/b/a BROADWAY GROCERY )<br>STOP, )<br>   )<br>          Plaintiff, )<br>   )<br>   vs. )<br>   )<br>UNITED STATES OF AMERICA, )<br>   )<br>          Defendant. )<br>_____ ) | CV. NO. SA-12-CV-00389-DAE |

ORDER GRANTING THE UNITED STATES OF AMERICA'S SECOND
MOTION FOR SUMMARY JUDGMENT

On May 9, 2013, the Court heard the United States of America's Second Motion for Summary Judgment ("Motion"). Matthew J. Obermeier, Esq., appeared at the hearing on behalf of Aliraj Enterprises, Inc. ("Plaintiff"); Mitchell L. Weidenbach, Esq., appeared at the hearing on behalf of the United States of America ("the Government"). After reviewing the Motion and the supporting documents, the Court **GRANTS** the Government's Motion. ("Mot.," Doc. # 24.)

BACKGROUND

Plaintiff Aliraj Enterprises, Inc. owns the Broadway Grocery Stop, a convenience store in San Antonio, Texas that is operated by Rahim and Rozina

1

Habib, Plaintiff's shareholders.  The Broadway Grocery Stop participates in the Supplemental Nutrition Assistance Program ("SNAP").  SNAP is authorized by the Food Stamp Act of 1964, 7 U.S.C. § 2011, et seq., and administered by the Food and Nutrition Service ("FNS") of the United States Department of Agriculture ("USDA").  It aims to "permit low-income households to obtain a more nutritious diet . . . by increasing [their] food purchasing power," and allows eligible households to purchase food items using SNAP benefits.  See 7 U.S.C. §§ 2011, 2014.  Retail food stores must be approved for participation in SNAP, and are subject to disqualification for violations of the Food Stamp Act.  See 7 U.S.C. §§ 2013(a), 2021.

The following facts are not in dispute.  The Food and Nutrition Service ("FNS") of the USDA, which administers SNAP, commenced an investigation of Plaintiff in July of 2011.  (Mot. at 3.)  Plaintiff had never before been charged with a SNAP violation.  (Doc. # 7 ¶ 5.)  Undercover informants visited Broadway Grocery Store on six occasions between July 27, 2011 and August 25, 2011.  (Mot. at 3.)  On three occasions, the informants attempted to purchase non-food, SNAP-ineligible items using SNAP benefits and were permitted to do so by a store employee in violation of the Food Stamp Act and its implementing regulations.  (Id.; "Compl.," Doc. # 1 ¶ 2.)

The Southwest Regional Office's Retailer Compliance Center ("Compliance Center") of the FNS sent a charge letter to Plaintiff on September 29, 2011. (See Administrative Record, "AR," Doc. # 8-1 at 7–8.) Plaintiff subsequently contacted the Compliance Center to respond to the charges, claiming that its system did not allow customers to buy non-food items using SNAP benefits. (AR at 32.) In support of this claim, Plaintiff sent register receipts to the Compliance Center showing that the non-food items had been paid for with cash. (Id.) Closer inspection revealed that non-food items had in fact been paid for using SNAP benefits, but the system had been manipulated to reflect a cash payment. (Id. at 33–34.)

On October 18, 2011, the Compliance Center notified Plaintiff that it had determined that the violations cited in the charge letter had occurred. (AR at 35.) As a sanction, the Compliance Center disqualified Plaintiff from SNAP for six months. (AR at 35.) The letter stated that the Compliance Center had considered Plaintiff's eligibility for a hardship civil money penalty ("CMP") under 7 C.F.R. § 278.6(f)(1)[1] in lieu of disqualification and concluded that Plaintiff was

---

[1] Section 278.6(f)(1) provides:
FNS may impose a civil money penalty as a sanction in lieu of disqualification when the firm subject to a disqualification is selling a substantial variety of staple food items, and the firm's disqualification would cause hardship to food stamp households because there is no other authorized retail food store in the area selling as large a variety

"not eligible for a CMP because there were other authorized retail stores in the area selling as large a variety of staple foods at comparable prices."  (Id.)

On October 24, 2011, Plaintiff submitted a timely request for review to the Chief of the Administrative Review Branch of the USDA.  (AR at 38.)  In the request for review, Plaintiff asserted that in six years of operation, the Broadway Grocery Stop had never been cited for a SNAP violation; the instant violations were committed by an employee inadvertently and without the owner's knowledge; the employee responsible had been admonished; and Plaintiff was in the process of obtaining a "Mercury Payment System," which would ensure that only eligible items were paid for with SNAP benefits.  (Id.)  The USDA issued a Final Agency Decision on March 26, 2012, concluding that there was sufficient evidence to support a finding that a six-month disqualification was properly imposed on Plaintiff.  (AR at 51.)

On April 24, 2012, Plaintiff filed the instant action, seeking judicial review of the Final Agency Decision pursuant to Section 14 of the Food and Nutrition Act of 2008, 7 U.S.C. § 2023, and Section 279.7 of the implementing

---

of staple food items at comparable prices.  FNS may disqualify a store which meets the criteria for a civil money penalty if the store had previously been assigned a sanction.  A civil money penalty for hardship to food stamp households may not be imposed in lieu of a permanent disqualification.

regulations, 7 C.F.R. § 279.7.  (Compl.)  Plaintiff alleges that the imposition of a six-month disqualification is improper because the USDA failed to consider the following mitigating factors: (1) that the SNAP violations were committed inadvertently by a store employee who was subsequently terminated; (2) Plaintiff has operated Broadway Grocery for more than six years and has never before been cited for SNAP violations; and (3) Plaintiff has implemented a Mercury Payment System that ensures that only eligible items are purchased with SNAP benefits. (Compl. ¶¶ 4–6.)  Plaintiff also alleges that the USDA erred by finding that it was not eligible for a CMP, claiming that it is one of only a few SNAP-authorized retail stores in its area and its disqualification will create a hardship to customers. (Compl. ¶ 7.)

On May 11, 2012, Plaintiff filed a Motion to Stay Administrative Action during the pendency of the instant action.  (Doc. # 4.)  On May 29, 2012, the Government notified the Court that it did not intend to initiate enforcement of the six-month disqualification until after the Court concluded its review of the administrative action.  (Doc. # 6.)  The Court denied Plaintiff's Motion to Stay on June 18, 2012.

On September 24, 2012, the Government filed a Motion for Summary Judgment.  (Doc. # 14.)  On February 25, 2013, the Court issued an Order Denying

the Government's Motion for Summary Judgment without prejudice to refiling ("February 25, 2013 Order"). (Doc. # 23). On April 8, the Government filed a Second Motion for Summary Judgment. (Doc. # 25.) Plaintiff did not file a response, and at the hearing on May 9, 2013 Plaintiff's counsel stated in open court that Plaintiff does not oppose the entry of summary judgment for the Government.

## STANDARDS OF REVIEW

I.    Review of Final Agency Decision

Title 7, U.S.C. § 2023 provides for judicial review of final agency decisions disqualifying retail food stores from participation in SNAP. 7 U.S.C. § 2023(a)(13). A suit for review "shall be a trial de novo by the court in which the court shall determine the validity of the questioned administrative action in issue." 7 U.S.C. § 2023(a)(15). The court may review not only the determination that a violation took place but also the propriety of the sanction imposed. Otto v. Block, 693 F.2d 472, 473 (5th Cir. 1982). "To be 'valid,' a sanction must not be arbitrary and capricious, and a sanction is arbitrary and capricious if it is unwarranted in law or without justification in fact." Goodman v. United States, 518 F.2d 505, 511–12 (5th Cir. 1975) (quoting Cross v. United States, 512 F.2d 1212, 1218 (4th Cir. 1975)). If the agency's sanction conforms to federal regulations and internal agency guidelines, the reviewing court may not deem it arbitrary and capricious.

Otto, 693 F.2d at 474.

II.      Motion for Summary Judgment

Summary judgment is granted under Federal Rule of Civil Procedure 56 when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see also Cannata v. Catholic Diocese of Austin, 700 F.3d 169, 172 (5th Cir. 2012).  The main purpose of summary judgment is to dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323–24 (1986).

The moving party bears the initial burden of demonstrating the absence of any genuine issue of material fact.  Id. at 323.  If the moving party meets this burden, the non-moving party must come forward with specific facts that establish the existence of a genuine issue for trial.  ACE Am. Ins. Co. v. Freeport Welding & Fabricating, Inc., 699 F.3d 832, 839 (5th Cir. 2012).  In deciding whether a fact issue has been created, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."  Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).  However, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a

motion for summary judgment." Brown v. City of Hous., 337 F.3d 539, 541 (5th Cir. 2003).

"Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsuhita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 289 (1968)).

## DISCUSSION

As a preliminary matter, the Court notes that Plaintiff does not deny that the SNAP violations occurred. (See Compl.) Thus, the only issue before the Court is whether the sanction imposed was arbitrary and capricious.

The Government moves for summary judgment, arguing that the facts show that the USDA's actions were not arbitrary and capricious and are supported by both law and fact. (Mot.) Specifically, the Government points out that the Final Agency Decision addressed each of the mitigating factors Plaintiff claims the USDA failed to consider. (Mot. at 5 (citing to AR at 52–56).) The Government claims that a six-month disqualification is the appropriate sanction under the governing federal regulations for the violation committed. (Mot. at 5–6.) Finally, the Government contends that the USDA's rejection of Plaintiff's request for a

CMP in lieu of disqualification was proper in light of the Compliance Center's finding that there are other authorized stores in the area "selling as large a variety of staple food items at comparable prices."  (Id. (quoting AR at 55).)

The Government advanced the same arguments in its original Motion for Summary Judgment.  (See Doc. # 14.)  In its February 25, 2013 Order, the Court concluded that the sanction imposed conforms to the governing federal regulations.  (Doc. # 23 at 9–10.)  The only issue before the Court, then, was whether the USDA's decision not to impose a civil money penalty in lieu of disqualification was unwarranted in law or without justification in fact.  See Goodman, 518 F.2d at 511–12 ("To be 'valid,' a sanction must not be arbitrary and capricious, and a sanction is arbitrary and capricious if it is unwarranted in law or without justification in fact.")  (quoting Cross, 512 F.2d at 1218).

Title 7 C.F.R. § 278.6(f)(1) authorizes the USDA to impose a CMP in lieu of disqualification when the firm sells a substantial variety of staple food items and "the firm's disqualification would cause hardship to food stamp households because there is no other authorized retail food store in the area selling as large a variety of staple food items at comparable prices."  In its original Motion for Summary Judgment, the Government maintained that Plaintiff is ineligible for a CMP because the Broadway Grocery Stop is not the only authorized retail food

store in its neighborhood "selling as large a variety of staple food items at comparable prices," and thus disqualification would not create a hardship to customers. (AR at 55; Doc. # 14 at 5.) In support of its motion, the Government submitted an affidavit executed by Kerrie E. McGuire ("McGuire"), a Dallas-based Program Specialist for the FNS. ("Aff. of Kerrie E. McGuire," Doc. # 17 Ex. 1.) McGuire stated that in her role as a Program Specialist, she determined that there are stores with comparable offerings and prices that accept SNAP benefits within a reasonable distance of Broadway Grocery Stop. (Aff. of Kerrie E. McGuire ¶ 4.) She also noted that "[a] store is considered to have comparable foods and prices if they stock foods from all four staple food groups"—fruits and vegetables; dairy; meat, poultry and fish; and bread and pasta—at reasonable prices. (Id. ¶ 6, n.1.) Prices and foods need not be identical as long as all food groups are represented and the prices are reasonable. (Id.)

In response to the Government's original Motion for Summary Judgment, Plaintiff contended that there is a genuine issue for trial regarding whether there are comparable stores in Broadway Grocery Stop's neighborhood. (Doc. # 16 at 3.) To establish the existence of a genuine issue of material fact, Plaintiff submitted an affidavit executed by Rahim Habib. ("Aff. of Rahim Habib," Doc. # 16 at 5–6.) According to Habib, the store closest to the Broadway

Grocery Stop is a gas station five blocks away, which Habib stated he "[does] not believe offers as many food staples as [his] store does." (Aff. of Rahim Habib at 5.) Habib asserted that the second closest convenience store is located at least one mile away and does not offer the same variety of food staples as the Broadway Grocery Store. (Id.) Finally, Habib noted that most of his customers are walk-in customers, many of whom are disabled and cannot walk an additional several blocks or miles to purchase food. (Id. at 5–6.)

      Noting that it could not make credibility determinations or give one of the affidavits more weight than the other, in its February 25, 2013 Order the Court concluded that the parties' competing affidavits precluded summary judgment. (Doc. # 23 at 13 (citing Reeves, 530 U.S. at 150; Thorne v. Leroy Danos Maint. Servs., Inc., 683 F.Supp.2d 433, 442 (E.D. La. 2010) (holding that summary judgment was precluded where the parties had produced competing affidavits and the court would have to make a credibility assessment in order to resolve conflicting factual allegations)).) The Court observed that the issue in this case—whether any other SNAP-authorized retail food stores in the Broadway Food Stop's vicinity sell as large a variety of staple food items at comparable prices—can be answered easily and conclusively by visiting the various stores and inventorying their stock. Accordingly, the Court denied the Government's Motion

for Summary Judgment without prejudice, instructing the Government to renew its motion after collecting evidence of that nature.

The Government has done just that. McGuire again submitted an affidavit stating that she has determined that there are 6 comparable stores within a one-mile radius of Broadway Grocery Stop that are authorized to accept SNAP benefits. (Doc. # 24 Ex. 1 ¶ 5.) Accompanying McGuire's affidavit this time are photographs of the food items available at Broadway Grocery Stop and those available at Convenient Food Mart and St. Mary's Food Mart, located .35 miles and .58 miles from Broadway Grocery Stop, respectively. (Doc. # 24 Ex. C.) The three stores appear to stock comparable items, and Convenient Food Mart and St. Mary's Food Mart both have a variety of foods in all four staple food groups. Plaintiff agrees that entry of summary judgment in the Government's favor is appropriate. Accordingly, the Court concludes that the USDA's decision not to impose a civil money penalty in lieu of disqualification was not unwarranted in law or without justification in fact.

## CONCLUSION

For the reasons stated above, the Court **GRANTS** the Government's Motion for Summary Judgment. (Doc. # 24.)

IT IS SO ORDERED.

DATED: San Antonio, Texas, May 10, 2013.

                                                  David Alan Ezra
                                                  Senior United States District Judge